IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN L. WADE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV-04-BE-0299-S |
| JIM WALTER HOMES, INC., | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

I. INTRODUCTION

Currently pending before this court is defendant Jim Walter Homes' ("JWH") motion to compel arbitration and motion to stay proceedings (docs. # 3 & # 10). In his opposition to the above-referenced motion, plaintiff John L. Wade ("Wade") urges the court to conclude that the arbitration agreement entered into between the parties is unconscionable and, therefore, not binding on either party.

For the reasons stated below, the defendant's motion to compel arbitration is due to be GRANTED, and the motion to stay proceedings is due to be DENIED. Plaintiff has presented no evidence to establish that the arbitration agreement at issue in this case is unconscionable. In the absence of a finding of unconscionability, the arbitration agreement in this case should be enforced. In the interest of judicial economy, this case is dismissed without prejudice for the plaintiff to re-file an appropriate action after the

completion of arbitration. Although the court rejects the plaintiff's unconscionability argument, it nevertheless will require the defendant to pay the fees and costs of arbitration as a condition to compelling arbitration.

## II. FACTS

The central dispute in this case arises from a purchase agreement between the parties for the construction of a new home on property owned by Wade. The contract price of plaintiff's home was $222,316.00. The plaintiff signed an arbitration agreement that was attached to the purchase agreement. The arbitration agreement specifically provides:

> [t]he parties agree that, at the election of either party, any controversy or claim arising out of or relating to the contract, or the breach thereof, . . . arising before, during or after the performance of this contract, shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association . . . *The parties agree and understand that they choose arbitration instead of litigation to resolve disputes.* (emphasis added).[1]

The agreement also provides that the parties acknowledge that "some or all of the materials, fixtures, and equipment, as well as the source of financing . . . will be purchased, received, or have their origin from sources outside the state when this contract is entered into." The funds extended to plaintiff to finance the construction were sent

---

[1] *See* doc. # 3, *Ex.* 1.

from a bank account in Tampa, Florida to Alabama.[2]

After completion and subsequent to plaintiff moving into the house, the floors of the home began to rot.[3] Wade alleged that the foundation was cracked and the doors in the house failed to shut properly.[4]

Wade filed suit in the Circuit Court of Jefferson County, Alabama on January 14, 2004 alleging negligence, misrepresentation, breach of contract and breach of warranty. JWH removed the case to this court and subsequently filed a motion to compel arbitration and stay proceedings.

### III. STANDARDS GOVERNING THE ENFORCEABILITY OF ARBITRATION CONTRACTS

The defendant argues that the arbitration agreement contained in the purchase agreement compels arbitration. The validity of an agreement to arbitrate is generally governed by the Federal Arbitration Act ("FAA" or the "Act"). *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA "makes enforceable a written arbitration provision in 'a contract evidencing a transaction involving commerce.'" *Roberson v. Money Tree of Alabama, Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997) (quoting 9 U.S.C.A. § 2). Congress enacted the FAA in 1925, as the Supreme Court has explained, for the purpose of "revers[ing] the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American

---

[2] Affidavit of C.T. Witherington.

[3] Compl., ¶ 11

[4] *Id.*

courts, and . . . plac[ing] arbitration agreements on the same footing as other contracts." *Gilmer*, 500 U.S. at 24.

The FAA accomplishes this objective primarily through its principal substantive provision, section two, that states that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections three and four of the Act buttress section two's policy favoring enforcement of arbitration agreements by authorizing, respectively, stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, 9 U.S.C. § 3,[5] and the issuance of court orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement, 9 U.S.C. § 4.[6]

Thus, the FAA amounts to "a congressional declaration of a liberal federal policy favoring arbitration agreements," and its effect "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the

---

[5]The relevant portion of 9 U.S.C. § 3 states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had. . . .

[6]9 U.S.C. § 4 states in pertinent part, "A party aggrieved by the alleged ... refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement."

Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Given Congress' stated preference for the enforcement of arbitration contracts, the United States Supreme Court has interpreted arbitration agreements under the FAA so as to further, rather than impede arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (holding that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

However, "the FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Indeed, the FAA is "at bottom" simply "a policy guaranteeing the enforcement of private contractual arrangements . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler--Plymouth, Inc.*, 473 U.S. 614, 625 (1985). Accordingly, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). "Nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

The question of whether a party is bound to arbitrate, as well as what issues it must arbitrate, generally are matters to be determined by the court on the basis of the language of the contract between the parties. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 943, 947 (1995); *AT & T Tech., Inc. v. Communications Workers of America*, 475

U.S. 643, 649 (1986). "When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. However, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25.

Under Alabama law, a party seeking to compel arbitration must proffer a contract containing an arbitration agreement and demonstrate that the underlying contract evidences a transaction affecting interstate commerce. *Kenworth of Birmingham, Inc. v. Langley*, 828 So. 2d 288, 290 (Ala. 2002). If the party seeking to compel arbitration establishes the above-referenced elements, then the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question. *Id.*

JWH has presented sufficient evidence to satisfy the first element required to compel arbitration. No one disputes that, in February 1997, Wade entered into a sales contract with defendant for the purchase of a new home. In addition to the contract, plaintiff signed an arbitration agreement. The arbitration agreement was a separate document from the contract itself, but was attached to the contract and clearly marked. Wade signed both the building contract and the arbitration agreement.

The defendant has also presented sufficient evidence to satisfy the second element required to compel arbitration because the agreement at issue in this case clearly affected interstate commerce. The agreement provides that "[t]he parties acknowledge that some or all of the materials, fixtures, and equipment, as well as the source of financing contemplated by this contract, will be purchased, received or have their origin from sources outside the state when this contract is entered into." For example, the funds extended to plaintiff for construction of the home were sent from a bank account in Tampa, Florida to Alabama.[7] Similarly, payments made by plaintiff were to be mailed to an address in either Tampa, Florida, or Atlanta, Georgia. Lastly, some of the materials to construct the plaintiff's home did in fact travel in interstate commerce. Therefore, the contract evidenced a transaction involving interstate commerce. *See Jim Walter Homes, Inc., v. Spraggins,* 853 So. 2d 913, 919 (Ala. 2002) (holding that a combination of financing and material originating outside the state provides the requisite substantial effect on interstate commerce).

With substantial evidence that a contract containing an arbitration agreement did exist between plaintiff and defendant, and that this contract did affect interstate commerce, the burden shifts to Wade to prove that the arbitration agreement is invalid. *See Kenworth*, 828 So. 2d at 290.

Wade contends that the arbitration agreement is unconscionable. Unconscionability

---

[7]*See* Affidavit of C.T. Witherington.

is one of the traditional contract defenses applicable to arbitration agreements. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996). Under Alabama law, agreements to arbitrate are not *per se* unconscionable. *See Green Tree Fin. Corp. of Alabama v. Vintson*, 753 So. 2d 497, 502 (Ala. 1999). Alabama does not have an implicit standard regarding unconscionability of the arbitration agreement, but insists that "[e]ach case must be decided on its own facts." *Roberson*, 954 F. Supp. at 1525 (quoting *E & W Bldg. Material v. American Sav. & Loan Ass'n*, 648 F. Supp. 289, 290 (M.D. Ala. 1986)).

Alabama courts generally use the following five factors to determine unconscionability: "1) whether one party was uneducated or unsophisticated; 2) whether a party is confronted by an absence of meaningful choice . . .; 3) whether the contractual terms are unreasonably favorable to one party; 4) whether the parties had unequal bargaining power; and 5) whether there were oppressive, one-sided, or patently unfair terms in the contract." *Bondy's Ford, Inc. v. Sterling Truck Corp.*, 147 F. Supp. 2d 1283, 1291 (M.D. Ala. 2001) (citations omitted).

Plaintiff first contends that the agreement is unconscionable because it fails to inform the plaintiff of the "exorbitant costs of arbitration" and his liability for those costs. Wade contends that JWH increased those costs by requiring three arbitrators instead of a single arbitrator in the agreement. As its only authority, Wade cites to Justice Lyons concurring opinion in *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 43 (Ala. 1998). Justice Lyons opined that "financial hardship, lack of choice, and one-sidedness

could, in a proper case, lead to a finding of unconscionability . . ." *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d at 43. In support of his contention, plaintiff offers no evidence sufficient to justify a finding of financial hardship that would render the agreement unconscionable. Justice Lyons' statement makes clear that financial hardship could make a contract unconscionable *in a proper case*. This case does not present such a proper case for a finding of unconscionability. The arbitration agreement in this case is clearly marked and unambiguous. Wade signed the arbitration agreement, which is evidence that he accepted the terms of the agreement as set forth. Paragraph one of the agreement clearly states:

> The parties herein agree to resolve all disputes by such arbitration at the AAA office with the closest geographic proximity to the house location stated herein. *The cost of such arbitration shall be divided equally among the parties to the arbitration.* Each party shall bear the cost of their own expenses and attorney's fees. *The number of arbitrator(s) shall be three.* (emphasis added).

Wade offered no evidence that at the time of signing he had any questions about the agreement, did not understand the agreement, or was unaware of what it was that he was signing.

The Alabama Supreme Court has held that without evidence that plaintiff was not put on notice of the terms of the arbitration agreement, the agreement will be upheld. *See Vintson*, 753 So. 2d at 503 (holding that the arbitration agreement disclosed all information, including who would bear the costs, and how the arbitrators would be

9

selected, to permit plaintiffs to make an informed decision). Therefore, in the absence of evidence that the plaintiff was unaware of the terms of the arbitration agreement, the court cannot conclude that the arbitration agreement at issue in this case is unconscionable.

The court also rejects Wade's argument that the agreement is unconscionable because JWH seeks to limit the relief to which plaintiff is rightfully entitled, yet has retained its right to seek certain remedies owed under the contract through litigation. The court rejects this argument. Courts make a distinction between the remedies sought and the *means* by which the remedies are sought. In *Ex Parte McNaughton*, the court explained:

> [t]he doctrine of mutuality of remedy is limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e,g,. Damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result.

728 So. 2d 592, 598 (Ala. 1998). In essence, to avoid arbitration, the plaintiff needs to show that resolving his claims through arbitration significantly deprives him of the remedies that would be available to him through judicial action. *See Goodwin v. Ford Motor Credit Co.*, 970 F. Supp. 1007, 1013-14 (M.D. Ala. 1997).

The court finds *Roberson v. Money Tree of Alabama, Inc.*, 954 F. Supp. 1519, 1524 (M.D. Ala. 1997), particularly instructive because its facts are analogous to this case. In *Roberson*, plaintiffs claimed that, because the arbitration agreement required them to

arbitrate all of their claims, yet allowed defendants to seek judicial remedy in certain circumstances, the agreement was oppressive "and therefore unconscion[able], [and] one-sided." *Roberson*, 954 F. Supp. at 1524. The court, however, found that while the arbitration agreement may have left plaintiffs with no bargaining power or meaningful choices, the contract itself was not "unfavorable" to plaintiffs. *Id.* at 1525. Specifically, plaintiffs failed to show that they could not obtain the same relief from arbitration that they could from a judicial action. *Id.*

In the case at hand, plaintiff has failed to make the same critical distinction that the plaintiffs in *Roberson* failed to make. While the arbitration agreement may give defendants the right to pursue judicial action while at the same time denying plaintiff that option, that alone does not make an arbitration agreement unconscionable. The Alabama Supreme Court has explicitly held that an arbitration clause that retains for one party the option of judicial or non-judicial relief is not unconscionable. *See Ex Parte Isbell v. Southern Energy Homes, Inc.*, 708 So. 2d 571, 574 (Ala. 1997). Without evidence that plaintiff would not be afforded the same remedy through arbitration that he would through judicial action, plaintiff's argument regarding the lack of mutuality is unpersuasive.

Wade further contends that the arbitration agreement left him with a "lack of choice" because the "form contract with boiler plate provisions . . . was already printed up and waiting for him." A party seeking to invalidate an arbitration agreement on grounds of unconscionability due to absence of meaningful choice must present evidence that he

11

could not have entered into a similar contract without an arbitration requirement either with the same party or with a competitor. *See Vintson*, 753 So. 2d at 504. Wade has failed to present any evidence that he exhausted all options and was left with a "lack of choice."

Lastly, plaintiff contends that the "unequal bargaining power" of the parties renders the arbitration agreement unconscionable. As support for his contention, Wade, who has a ninth grade education, submits that he lacks the "ability to comprehend legal phrases" such as arbitration and could not be expected to "come to the table" prepared to negotiate for an arbitration agreement. "Ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all of the provisions contained in that contract and will be bound thereby." *Vintson*, 753 So. 2d at 502 (quoting *Power Equip. Co. v. First Alabama Bank*, 585 So.2d 1291, 1296 (Ala. 1991)). No evidence in the record indicates that plaintiff made defendant aware of his education level, told defendant that he did not understand the terms of the agreement that he was signing, or that he lacked the ability to fully comprehend the effect that this agreement would have on his legal rights.

Instead, the plaintiff signed the arbitration agreement, and therefore, without further evidence of unconscionability, will be bound by the terms stated therein. *See Spraggins*, 853 So. 2d 913 (Ala. 2002). "To conclude otherwise would allow . . . [plaintiff] to shut [his] eyes to the terms of the documents [he] voluntarily signed . . . No

such doctrine is supported by Alabama's general contract law, and such a doctrine would, therefore be contrary to the strong federal policy favoring arbitration." *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So.2d 777, 784 (Ala. 2000).

## IV. CONCLUSION

For the above-stated reasons, the court concludes that the motion to compel arbitration is due to be GRANTED and the motion to stay proceedings is due to be DENIED. The court will enter a separate order dismissing this case without prejudice for either party to file an appropriate action after the completion of arbitration, if necessary.

DONE and ORDERED this 16th day of August, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE

13